### SCHAFER v. BOARD OF EDUCATION OF ALLIANCE CITY SCHOOL DISTRICT et.

Common Pleas Court, Stark County.

No. 91039.   Decided August 8, 1950.

### OPINION

By McLAUGHLIN, J.

The pleadings, consisting of the petition of the plaintiff and the composite answer of the defendants and the reply of the plaintiff present one issue of fact, as follows: Did plaintiff, Russell E. Schafer, resign his position as Superintendent

of the Alliance City Schools at the meeting of the School Board held on May 29, 1950?

The petition of the plaintiff claims, in substance, that plaintiff is the duly elected, qualified and acting Superintendent of Schools of Alliance City School District, Stark County, Ohio, by virtue of election, employment and appointment thereto by the Board of Education of Alliance City School District, as previously constituted for a period of five years, beginning August 1, 1949, and ending July 31, 1954.

It is claimed in the composite answer of the defendant that the plaintiff resigned his position at a meeting of the Alliance Board of Education held on May 29, 1950, and that at said meeting the board duly accepted the plaintiff's resignation.

Certain facts about the meeting of May 29 are important. First of all, that was the same evening on which another meeting, called in the record the Coppock meeting, was held. The Coppock meeting was called for 8 P. M. It was in commemoration of one of the high school teachers who was retiring after long years of service, and Mr. Schafer was to have a prominent part in the program. It was the Monday evening just previous to the week of Commencement. It was after an affidavit had been filed in the Alliance Municipal Court against Mr. Schafer, the plaintiff, charging him with assault and battery on one of his pupils named Hawkins, and the whole matter is referred to in the record as the Hawkins incident. This meeting of the Board of Education was held at the regular meeting place, but the record shows that the Board could not have been together as a group for a period of time over thirty-five minutes, at most. All board members were present. Plaintiff was present. The regular clerk was absent and was not notified, of the meeting, although the record shows he did attend the Coppock meeting and was therefore available for this board meeting.

In support of defendant's claim of plaintiff's resignation and its acceptance by the board on May 29, 1950, the minutes of that gathering show the following:

"Mr. Schafer was then asked to rejoin the meeting, which he did. Mr. Robertson informed him that the Board desired his resignation. Mr. Schafer then said 'When do you want my resignation?' Mr. Robertson then said 'We would like to have it now with your service to terminate July 31, 1950.' Mr. Schafer said 'If that is what you want there is nothing else for me to do. How long do you want me to remain around here? My usefulness is now through.' Mr. Robertson said 'You need not remain around after commencement.' Mr.

Schafer said during the meeting when the Barry Hawkins matter was referred to 'I realize that I have made a serious mistake.' He also stated that he had only hit the boy once.

"A discussion was then had by the members of the Board and Mr. Schafer with respect to the manner and time for the release of the news of Mr. Schafer's resignation. It was stated that perhaps it would be better for Mr. Schafer and the graduating class activities if the news was not released until after commencement. Then Mr. Schafer said 'It makes no difference to me when the announcement is made. It will be on the streets tomorrow anyway. It makes no difference to me whether you announce that it was a voluntary resignation or a resignation by request.'" (End of quoted minutes.)

Everyone there, except plaintiff, knew why they were there and what they wanted to accomplish. Their purpose of meeting together was to get plaintiff to resign his position. This was a serious and very important business. The employment or retaining in their employ of a Superintendent of Schools is perhaps the most important of all matters that can come to the attention of any School Board. The clerk of the board was not notified of this gathering and was not present. No explanation was given as to why he was not there. Apparently he was available and this court, knowing his faithfulness to duty, does not look with favor upon this arranged absence. This court ventures to say that if the regular clerk had been there, the confusion and uncertainty as to what actually happened there would have been avoided. However, the clerk was not a member of the board, his attendance is not a prerequisite to a lawful meeting. There is conflict in the testimony about the choosing and functioning of a clerk pro tempore. A presumption favors the regularity of proceedings of a School Board, which this court applies to this meeting and therefore accepts the story that Mr. Olds was duly chosen clerk pro tempore as provided by law, and even though he states that he made no notes at the gathering and had nothing to tie his minutes to, 12 days later, except his own memory, and even though he apparently participated in a studied attempt, aided by another board member, and board counsel, to doctor the minutes of the purported meeting, this court applies the presumption of regularity and accepts the minutes so prepared, as the best evidence of what did happen.

The board knew or should have known that plaintiff was under pressure of the Hawkins incident, of the Coppock

party and of approaching commencement. These circumstances together with others lend themselves to a picture of entrapment and certainly give credence to plaintiff's story that what he did say at the meeting was under duress.

Accepting the doctored minutes as the best evidence of what actually took place at this May 29 meeting, this court is of the opinion that what plaintiff did say, he said under undue pressure and was not legally bound by it. Further, this court is of the opinion that what he did say did not amount to a resignation in any event.

Certain legal requirements apply to meetings of the Board of Education and the cases of Ohio are explicit to the effect that these requirements are mandatory and non-compliance therewith invalidates all proceedings which take place.

Sec. 4834-2 GC provides as follows:

"Absence of Clerk. If a clerk of a board of education is absent from any meeting of the board of education the members present shall choose one of their number to serve in his place pro tempore."

And §4834-3 GC provides:

"Record of Proceedings. The clerk of the board of education shall record the proceedings of each meeting in a book to be provided by the board for that purpose which shall be a public record. The record of proceedings at each meeting of the board shall be read at its next succeeding meeting, corrected, if necessary, and approved, which approval shall be noted in the proceedings. After such approval, the president shall sign the record and the clerk attest it."

Sec. 4834-1 GC provides, in part, as follows:

"Quorum: 'yea' and 'nay' vote. * * * Upon a motion to adopt a resolution * * * to employ a superintendent or teacher * * * the clerk of the board shall publicly call the roll of the members composing the board and enter on the records the names of those voting 'aye' and the names of those voting 'no' * * *."

This court is of the opinion that the words "to employ" as contained in §4834-1 GC embody and encompass the words "not to employ" and the words "to accept or not to accept a resignation" and the words "to retain or not to retain a Superintendent of Schools."

We find in the opinion of Hart, J. in the case of **State ex**

rel. **Rutherford v. Barberton, 148 Oh St, 242, 35 O. O. 222,** at the bottom of page 245, these words:

"* * * It would seem to follow that the determination not to employ must be reached by the same formality and solemnity as was required to affect his original employment. In other words, it would require Board action at a regular meeting or a special meeting for that purpose * * *."

Certainly, such a matter is all important and serious. The business of employing or ceasing to employ or accepting a resignation, which means the termination of the employment of a Superintendent of Schools, is one of the most important if not the most important of matters, that any School Board has to consider at any time, and we therefore hold that it comes within the purview of the statutory provision requiring the calling of the roll for "aye" or "no" vote and the entering of such upon the public records.

Sec 4834-3 GC contains the provision that the record of proceedings at each meeting of the board shall be read at its next succeeding meeting, corrected, if necessary, and approved, which approval shall be noted in the proceedings. It does not state that they shall be read, corrected and approved at the next regular meeting or at the next special meeting, but the Legislature intended, evidently, that the records of proceedings of a meeting should be read, corrected, if necessary, and approved at the next meeting of the board, be it special or regular, because that is the time when the matter of the whole proceedings is fresh in the minds of the board members and the time when they are best able to make corrections and approvals. Any other method leads to confusion and uncertainty, as it did in this case.

A careful perusal of the minutes of the May 29 meeting and a minute examination of all the quotes of Mr. Schafer therein, does not disclose any words of actual or factual resignation. Nor does the same careful examination disclose any words of actual or factual acceptance of any resignation.

However, if the court were to hold, and it does not here do so, that there was sufficient words said in the May 29, 1950 gathering of the School Board to constitute a valid resignation and an acceptance thereof, we do hold that the proceedings of that gathering respecting and pertaining to the Schafer matter are a nullity because of non-compliance with statutory requirements which we hold to be mandatory.

Likewise, all proceedings with reference to the Schafer matter

become a nullity by reason of non-compliance of the mandatory words of §4834-2 GC, which require that the record of the proceedings of each meeting be made in a book to be provided by the board for that purpose, and which shall be a public record, and that the record of proceedings at each meeting of the board shall be read at its next succeeding meeting, corrected, if necessary, and approved, which approval shall be noted in the proceedings.

The issue of fact is therefore resolved in favor of the plaintiff.

There is also presented an issue of law, upon which issue it is the further finding of this court that Mr. Schafer did resign in writing, which is Plaintiff's Exhibit 1, in this case:

"May 30, 1950

Mr. H. Gordon Robertson, President,
Alliance Board of Education,
American Steel Foundries,
Alliance, Ohio.
Dear Mr. Robertson:

There must be some more pleasant way to earn a living than being a superintendent of schools and I hope to find some such a way. Therefore, will the Board of Education please accept my resignation as of July 31, 1950?

Until that time I will perform such duties as the Board may desire me to do to the best of my ability. I will appreciate it if this resignation is accepted by the Board at its earliest possible convenience so that I may be free to begin other plans.

I appreciate the cooperation which the Alliance Boards of Education have given me while I have been Superintendent of Schools and I sincerely hope the work of the schools goes forward to the full satisfaction of all who are interested.

Sincerely yours,
RES:dl                    (Signed) Russell E. Schafer"

and that by the withdrawal in writing, which is Plaintiff's Exhibit 2 in this case:

"Alliance, Ohio
June 3, 1950.

Alliance Board of Education,
Alliance, Ohio.
Attention: Mr. H. Gordon Robertson,
    President.
    I hereby withdraw my resignation as Alliance Superintendent

of Schools heretofore given on May 30, 1950.

Respectfully yours,<br>
(Signed) Russell E. Schafer<br>
Russell E. Schaffer"

any act by way of accepting the resignation was a complete nullity. We reach this conclusion as to the law by virtue of the decisions of **State ex rel. Rutherford v. Barberton, 148 Oh St, 242, 35 O. O. 222, State ex rel. Staley v. Lakewood, 47 Oh Ap, 519,** and **Babbitt v. Shade, 60 Oh Ap, 100, 13 O. O. 447,** particularly pointing out the fifth syllabus in the Lakewood case, which reads:

> ■ "Officer's resignation to take effect in future may be withdrawn before effective date thereof, even against will of body which has accepted it."

By withdrawing his resignation before the effective date, the Board of Education of the Alliance City School District were placed in the position, in the event they desired to dispense with the services of the plaintiff as Superintendent of Schools, of being obliged to file charges to remove him, according to law.

The issue of law is therefore resolved in favor of the plaintiff.

It will therefore be ordered that the restraining order pendente lite heretofore issued by this court be made permanent and the court will find and declare that the plaintiff, Russell E. Schafer, is the duly acting, appointed and elected Superintendent of Schools of the Alliance City School District, and is entitled to continue in such office until July 31, 1954, unless and until his contract of employment between the Board of Education of Alliance City School District and the plaintiff, Russell E. Schafer shall hereafter be terminated in accordance with the laws of the State of Ohio.

The court will further find and declare that the defendant Board of Education was and is without rights to declare or treat plaintiff's office of Superintendent of Schools of the Alliance City School District as vacant and that no such vacancy has existed at any time since Mr. Schafer and the defendant board consummated his present contract of employment.

Plaintiff to prepare entry. Exceptions to the defendants.